IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

HA DONG LU,
                    *Petitioner*,

        v.                                      1:25-cv-00390-MSN-IDD

KRISTI NOEM, *et al.*,
                    *Respondents*.

ORDER

This matter comes before the Court on Ha Dong Lu's ("Petitioner") Petition for Writ of Habeas Corpus (ECF 1) in which he challenges the lawfulness of his detention by Immigration and Customs Enforcement ("ICE") and his potential removal to a third country. Petitioner, a native of Vietnam, has resided in the United States since 1989. In 2003, Petitioner received a final order of removal. ICE held Petitioner in custody for almost a year after his removal order became final but could not remove him to Vietnam and so, in 2004, ICE released him from custody on an Order of Supervision. On January 30, 2026, ICE re-detained Petitioner during an immigration check-in. Petitioner contends that his renewed detention violates (1) 8 U.S.C. § 1231, as interpreted by *Zadvydas v. Davis*, 533 U.S. 678 (2001); (2) his right to due process; and (3) regulations governing his Order of Supervision, 8 C.F.R. §§ 241.4 and 241.13. Petitioner further argues that his potential removal to a third country violates his right to procedural due process.

For the reasons that follow, the Court concludes that Petitioner's continued detention violates 8 U.S.C. § 1231, his right to due process, and 8 C.F.R. § 241.4(*l*) and will grant his Petition as to Counts I-III.

## I.    BACKGROUND

Petitioner is a 52-year-old native and citizen of Vietnam who entered the United States as a lawful permanent resident in 1989. ECF 4-1 ¶¶ 5-6. In 2003, Petitioner was convicted of drug trafficking and armed robbery. ECF 1 ¶ 15. His convictions led an Immigration Judge to order

Petitioner's removal on March 13, 2003. *Id.* On July 9, 2003, the Board of Immigration Appeals ("BIA") affirmed Petitioner's removal order. ECF 4-1 ¶ 16.

At the time, Vietnam refused to accept repatriations of citizens who left the country prior to 1995 as refugees. ECF 1 ¶ 16. Thus, on May 27, 2004—323 days after Petitioner's removal order became final—Respondents released him from detention on an Order of Supervision. ECF 4-1 ¶ 17.

Petitioner alleges that, since his release, he has "lived peacefully in the United States [and] complied with all supervision requirements." ECF 1 ¶ 17. He married a United States citizen and has two U.S. citizen children. *Id.* at ¶ 14. As recently as August 13, 2024, United States Citizenship and Immigration Services issued Petitioner employment authorization documents under "Category C18." *Id.* at ¶ 17; ECF 1-5. Such authorization can only be granted to noncitizens who have received a final order of deportation or removal but who "cannot be removed due to the refusal of all countries designated by the [noncitizen] . . . or because the removal of the [noncitizen] is otherwise impracticable or contrary to the public interest." 8 C.F.R. § 274a.12(c)(18); *see also* 8 U.S.C. § 1231(a)(7).

On January 30, 2026, Petitioner appeared for an immigration check-in at the ICE office in Chantilly, Virginia. ECF 1 ¶ 18. During his check in, and without prior warning, ICE officers detained Petitioner and then transferred him to the Farmville Detention Center. *Id.* Petitioner has remained in detention since that time. *Id.*

On the day of his detention, ICE issued Petitioner a Notice of Revocation of Release, stating that it was revoking his release pursuant to 8 C.F.R. § 241.4(*l*) to enforce the removal order entered against him. ECF 5-2. The Notice indicated that ICE was "seeking a travel document" to effect his removal to Vietnam and was signed by Robert Gaudian, the Field Office Director of the ICE Washington Field Office. *Id.*; *see also* ECF 4-1 ¶ 18.

On February 2, 2026, Petitioner received a letter from the Consulate of the Socialist Republic of Viet Nam. ECF 1-6. The Consulate stated that it could not issue Petitioner a Vietnamese passport or other travel documents because he "does not meet the requirements." ECF 1-6.

On February 10, 2026, Petitioner filed this Petition against Kristi Noem, the DHS Secretary; Todd Lyons, the Acting Director of ICE; Robert Guadian; and Pamela Bondi, the Attorney General (collectively "Federal Respondents"). ECF 1. The Petition also names Jeffrey Crawford, the warden of the Farmville Detention Center. *Id*. Petitioner seeks his immediate release. *Id*.

## II.    DISCUSSION

Petitioner argues that his detention violates the Immigration and Nationality Act ("INA") and his right to due process. He further argues that the Federal Respondents violated the INA's implementing regulations and the *Accardi* doctrine in revoking his Order of Supervision.[1] The Court will address each claim in turn.

### A.    Petitioner's INA and Due Process Claim Regarding His Current Detention

Under 8 U.S.C. § 1231, which governs the detention of noncitizens like Petitioner who have received a final order of removal, noncitizens shall be detained during a ninety-day "removal period" following their final order to effectuate their removal. After the 90-day deadline for removal, DHS may release a noncitizen subject to terms of supervision.[2] 8 U.S.C.

---

[1] Petitioner also argued in his Petition that, "[t]o the extent that Respondents may attempt to remove [Petitioner] to a third country other than Vietnam," doing so may violate due process. ECF 1 ¶ 50. The Federal Respondents, however, have disclaimed any plans to remove Petitioner to a third country, *see* ECF 4 at 6, and so Petitioner withdrew this claim, ECF 5 at 14, and the Court need not address it. After fully briefing the Petition, Petitioner moved for leave to serve discovery requests on the Federal Respondents. ECF 6. Because the Court grants the Petition, it will deny Petitioner's Motion for Leave to Serve Discovery Requests as moot.

[2] Two separate regulations govern the release of noncitizens on orders of supervision. Under 8 C.F.R. § 241.4, "DHS may release a [noncitizen] under an order of supervision if it determines that the [noncitizen] would not pose a danger to the public or a risk of flight, without regard to the likelihood of the [noncitizen's] removal in the reasonably foreseeable future." *Phommachak v. Wesling*, No. 25-13894-BEM, 2026 WL 157491, at *4 (D. Mass. Jan. 20, 2026)

§§ 1231(a)(3), (6). DHS may also continue to detain a noncitizen in certain circumstances, including where the noncitizen is inadmissible or DHS determines that the noncitizen is "a risk to the community or unlikely to comply with the order of removal." 8 U.S.C. § 1231(a)(6); *see also Castaneda v. Perry*, 95 F.4th 750, 755 (4th Cir. 2024). If DHS releases an individual, they may subsequently re-detain an individual under certain circumstances, including where necessary to enforce a removal order or where there has been a change in circumstances. *See* 8 C.F.R. §§ 241.4(*l*); 241.13(h)(i)(2).

The statute does not impose an explicit limit on how long an individual may be detained, either following the removal period or after the revocation of an order of supervision. The Supreme Court, however, has recognized that "serious constitutional concerns" would arise if § 1231 were interpreted to allow for "indefinite detention." *Zadvydas*, 533 U.S. at 682. Thus, in *Zadvydas*, the Supreme Court construed § 1231 to contain an implicit limit on terms of detention, "the application of which is subject to federal-court review." *Id.* Under *Zadvydas*, a noncitizen's detention pursuant to § 1231 is presumptively unlawful and violates due process if his detention extends for more than six months and the petitioner "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. If a petitioner makes this showing, the burden shifts to the government to rebut the showing. *Id.* "[A]s the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely [will] shrink." *Id.*

---

(cleaned up). Alternatively, under 8 C.F.R. § 241.13, release may be "based on a determination that there is no significant likelihood of removal to the country to which [the noncitizen] was ordered removed, or to a third country, in the reasonably foreseeable future." *Id*. If a petitioner is released pursuant to 8 C.F.R. § 241.13, the government must show a change in circumstances in order to revoke the supervision order. *See id*. Courts thus often analyze the legality of a petitioner's re-detention by examining whether the government met its burden under § 241.13. *See, e.g.*, *Nguyen v. Hyde*, 788 F. Supp. 3d 144, 149 (D. Mass. 2025). Here, Petitioner's detention was revoked under 8 C.F.R. § 241.4, not § 241.13. ECF 5-2 at 1. The Court thus considers whether his continued detention violates his right to due process under *Zadvydas*.

The Federal Respondents concede that Petitioner has been cumulatively detained for well over six months based on his detention in 2003 to 2004.[3] ECF 4 at 8. But they argue that Petitioner has not met his burden to show that he is unlikely to be removed in the foreseeable future. *Id.*

The Court disagrees and concludes that Petitioner has met his burden to show that his removal is not reasonably foreseeable. The Federal Respondents previously determined that Petitioner could not "be removed due to the refusal of all countries designated by [Petitioner] . . . or because the removal of [Petitioner] is otherwise impracticable or contrary to the public interest." 8 C.F.R. § 274a.12(c)(18); *see also* 8 U.S.C. § 1231(a)(7). They thus released him into the community more than twenty years ago and issued him employment authorization on that basis as recently as 2024. *See* ECF Nos. 1-2, 1-4, & 1-5. Petitioner has further shown, through a declaration of an attorney with two decades of experience in Vietnamese repatriation cases, that the removal of Vietnamese citizens who left the country before 1995 is a lengthy and uncertain process that hinges on the Vietnamese government's ability to conduct interviews and site visits with relatives in Vietnam. ECF 5-1 ¶¶ 8-9. Moreover, just this month, the Vietnamese consulate refused to provide Petitioner with a passport or other travel documents. ECF 1-6. The documented difficulties in repatriating individuals to Vietnam, ICE's conclusion as recently as 2024 that Petitioner could not be returned to Vietnam, and the consulate's refusal to issue him travel documents strongly suggest that Petitioner's removal is not significantly likely. *See Nguyen v. Scott*, 796 F. Supp. 3d 703, 723 (W.D. Wash. 2025) (concluding that a Vietnamese citizen who arrived before 1995 had met his burden to show removal was unlikely because "the process for procuring travel documents from Vietnam for pre-1995 immigrants continues to be uncertain and protracted"); *Zavvar v. Scott*,

---

[3] Although the Federal Respondents do not dispute this point, the Court notes that the length of Petitioner's current detention does not bar his claim. "[T]he six-month period does not reset when the government detains a noncitizen, releases him from detention, and then re-detains him again." *Nguyen v. Scott*, 796 F. Supp. 3d 703, 721–22 (W.D. Wash. 2025) (quoting *Sied v. Nielsen*, No. 17-cv-06785-LB, 2018 WL 1876907, at *6 (N.D. Cal. Apr. 19, 2018)) (cleaned up).

No. 25-2104-TDC, 2025 WL 2592543, at *7 (D. Md. Sept. 8, 2025) (concluding that removal was not reasonably foreseeable where, for seventeen years after petitioner's removal order, respondents either made no efforts to remove petitioner or those efforts were unsuccessful).

The Federal Respondents have failed to rebut this showing. In response, they submit a declaration from an ICE assistant field office director who states that "[s]ince February 2025, Vietnam has issued all travel documents requested. In Fiscal Year 2025, Vietnam accepted 699 removals and 327 of them were subjects who arrived in the United States prior to 1995." ECF 4-1 ¶ 20. But it is not so simple. Before DHS may request travel documents from Vietnam, it must obtain documentation verifying the individual's citizenship, such as a passport. *Doung v. Bondi*, No. C25-2095-KKE, 2025 WL 3628631, at *4-5 (W.D. Wash. Dec. 15, 2025). Here, the Vietnamese consulate has refused to issue Petitioner those documents. ECF 1-6. And while the ICE officer states that "ICE is seeking a travel document to effectuate his removal to Vietnam," it appears that ICE has not yet submitted such a request. ECF 4-1 ¶¶ 18-19 (stating that Petitioner has not completed the necessary paperwork for DHS to request his travel documents). Federal Respondents have provided no information about if, or when, DHS will issue a request for Petitioner's travel documents, nor have they provided any individualized factual basis for their belief that Vietnam will issue Petitioner travel documents given his criminal convictions. *See Doung*, 2025 WL 3628631, at *4.

As multiple courts have concluded, Federal Respondents' showing is insufficient to demonstrate a significant likelihood of Petitioner's removal in the foreseeable future. *See, e.g.*, *Doung*, 2025 WL 3628631, at *5 (noting that the government had not met its burden where the Vietnamese petitioner had been in detention for more than six months as of December 2025 and ICE had not yet located documentation of his citizenship, indicated when ICE would be able to request travel documents, or shown a factual basis to support their belief that Vietnam would issue

travel documents); *Bui v. Scott*, , No. 2:25-cv-02268, 2025 WL 3706796, at *4 (W.D. Wash. Dec. 22, 2025) (acknowledging the government's assertion that Vietnam had granted all travel document requests since February 2025 but concluding that the government had nevertheless failed to meet its burden where it could not provide any evidence to show they had requested the petitioner's travel documents or could clear potential hurdles to obtaining those documents); *Vu v. Noem*, 1:25-cv-01366-KES-SKO, 2025 WL 3114341, at *6 (E.D. Cal. Nov. 6, 2025) (concluding that the government had not met its burden to show changed circumstances under 8 C.F.R. § 241.13 where it did "not identify any specific efforts they have made to obtain a travel document from Vietnam for petitioner, much less whether they have any indication from Vietnam that it is likely to issue such a travel document"); *Huynh v. Wesling*, No. 25-CV-13794, 2026 WL 183467, at *5-6 (D. Mass. Jan. 23, 2026) (same).

The Federal Respondents also point obliquely to a Memorandum of Understanding ("MOU") signed in 2020 between Vietnam and the United States aimed at facilitating the removal of Vietnamese citizens. ECF 4 at 9. But the Federal Respondents did not attach that MOU or explain how it could show a change the circumstances in Petitioner's case where the government concluded as recently as 2024 that his removal was still unlikely.[4] *See* ECF 1-5; 8 C.F.R. § 274a.12(c)(18); *see also, e.g.*, *Nguyen v. Hyde*, 788 F. Supp. 3d 144, 151 (D. Mass. 2025) (concluding that the MOU was insufficient to show changed circumstances under 8 C.F.R. § 241.13); *Hoac v. Becerra*, No. 2:25-cv-01740, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) (same); *Vu*, 2025 WL 3114341, at *6 (same).

---

[4] The Federal Respondents also rely on *Tran v. Baker*, 1:25-cv-01598, 2025 WL 2085020 (D. Md. July 24, 2025), to argue that they have rebutted Petitioner's showing that his removal is not significantly likely. ECF 4 at 9-10. But in *Tran*, ICE had requested the petitioner's travel documents and petitioner was told to expect a meeting with the Vietnamese consulate within three months. *Tran*, 2025 WL 2085020, at *5. The Federal Respondents have made no such showing here.

In sum, the Federal Respondents have not come forward with any concrete evidence to show that Petitioner's removal is significantly likely. Instead, the record indicates that Federal Respondents detained Petitioner before requesting travel documents and have failed to provide assurances that they will be able to request or obtain those documents in the circumstances of this case. Without more, the Federal Respondents have not shown that Petitioner's detention will be "finite." *Castaneda*, 95 F.4th at 757. His continued detention thus violates § 1231(a)(6) and his right to due process.

**B.    Revocation of Petitioner's Order of Supervision**

In Count III, Petitioner claims that the revocation of his Order of Supervision violates 8 C.F.R. § 241.4, and the *Accardi* doctrine, which requires an agency to follow the procedural safeguards established by its own regulations. *United States v. Morgan*, 193 F.3d 252, 266 (4th Cir. 1999). An agency's failure to follow those regulations "may result in the invalidation of the ultimate administrative determination." *Id.* Ordinarily, an agency's failure to follow it regulations will only render its determination invalid if an individual can demonstrate that they were prejudiced by the deviation. *Id.* at 267. Prejudice, however, may be presumed where "compliance with the regulation is mandated by the Constitution and where an entire procedural framework, designed to insure the fair processing of an action affecting an individual is created but then not followed by an agency." *Santamaria Orellana v. Baker*, No. 25-cv-1788-TDC, 2025 WL 2444087, at *5 (D. Md. Aug. 25, 2025) (internal quotation marks omitted).

The INA's implementing regulations provide that a noncitizen "who has been released under an order of supervision or other conditions of release who violates the conditions of release may be returned to custody." 8 C.F.R. § 241.4(*l*)(1). The noncitizen "will be afforded an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R.

§ 241.4(*l*)(1). Separately, the "Executive Associate Commissioner shall have authority, in the exercise of discretion, to revoke release and return to Service custody [a noncitizen] previously approved for release under the procedures in this section." 8 C.F.R. § 241.4(*l*)(2). "A district director may also revoke release of [a noncitizen] when, in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner." *Id.*

Here, the Federal Respondents issued Petitioner a Notice of Revocation of Release under 8 C.F.R. § 241.4, signed by Respondent Guadian, the Field Office Director of the ICE Washington Field Office. ECF 5-2. Guadian is a district director, not an Executive Associate Commissioner. Yet there is no indication that Guadian determined that revocation was in the public interest or that circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner, as required by 8 C.F.R. § 241.4(*l*)(2). As other courts in this Circuit have concluded, "the requirement that a senior official 'make the determination to revoke release—that is, to restrict a person's liberty—is not merely a housekeeping requirement' but instead 'part of a procedural framework, designed to insure the fair processing of an action affecting an individual, a violation of which can be deemed to be prejudicial and thus to implicate due process.'" *Bautista Serpas v. Simon*, 1:25-cv-02369-ATJ, slip op. at 10-11 (E.D. Va. Feb. 3, 2026) (quoting *Santamaria Orellana v. Baker*, No. 25-cv-1788-TDC, 2025 WL 2841886, at *5 (D. Md. Oct. 7, 2025)). Because the Federal Respondents failed to comply with 8 C.F.R. § 241.4(*l*)(2), the Court concludes that the revocation of Petitioner's release violated the *Accardi* doctrine and his right to due process.

## III.    CONCLUSION AND ORDER

For the foregoing reasons, the Court concludes that Petitioner's continued detention violates 8 U.S.C. § 1231, his right to due process, and the *Accardi* doctrine. Accordingly, it is hereby

ORDERED that the Petition is GRANTED as to Counts I, II, & III; and it is further

ORDERED that no later than 4:00 p.m. on March 3, 2026, Federal Respondents RELEASE Petitioner from detention with all of his personal property; and it is further

ORDERED that Petitioner's order of supervision is RESTORED immediately and may not be revoked unless done so in compliance with the requirements of 8 C.F.R. § 241.4; and it is further

ORDERED Federal Respondents and any of Federal Respondents' officers, agents, servants, employees, and attorneys, as well as other person acting in concert, are ENJOINED from re-detaining Petitioner except upon a showing of sufficient changed circumstances with respect to the prospects for removal to a qualifying consenting country; and it is further

ORDERED that Respondents file a status report with this Court within three days stating whether Petitioner has been released and if not, why not; and it is further

ORDERED that Count IV of the Petition is DISMISSED WITHOUT PREJUDICE; it is further

ORDERED that Petitioner's Motion for Leave to Serve Discovery Requests (ECF 6) is DENIED as moot.

The Clerk is directed to enter judgment in Petitioner's favor pursuant to Federal Rule of Civil Procedure 58, forward copies of this Order to counsel of record, and close this civil action.

/s/
_____
Michael S. Nachmanoff
United States District Judge

March 2, 2026
Alexandria, Virginia

10